# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ILKA WESTON,<br><br>                              Plaintiff,<br><br>v.<br><br>BRENDA PEREZ, et al.,<br><br>                             Defendants. | Case No.: 16-CV-2952 W (WVG)<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS [DOC. 20]** |

Plaintiff Ilka Weston brought this action against Brenda Perez, Alba Marquez, Sharp Healthcare, and Scripps Health. (*Compl.* [Doc. 1].) Scripps Health was dismissed on January 27, 2017. (*Jan. 27, 2017 Order* [Doc. 12].) Sharp Healthcare was dismissed on July 11, 2017. (*July 11, 2017 Order* [Doc. 24].) Defendants now move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). [Doc. 20.] Plaintiff opposes. [Doc. 21.] The Court decides the matter on the papers submitted and without oral argument. See Civ. L.R. 7.1(d)(1). For the reasons that follow, the Court **DENIES** Defendants' motion.

//
//
//

## I. BACKGROUND

The Complaint alleges the following facts. (*Compl.* [Doc. 1].) "In or around May 28, 2015," the San Diego County Health and Human Services Agency, Child Welfare Services, filed a petition against Plaintiff Weston seeking to terminate Plaintiff's parental rights. (*See id.* [Doc. 1] ¶¶ 12–13.) The case was assigned to Defendant Brenda Perez, a social worker at the agency reporting to supervisor Alba Marquez. (*Id.* [Doc. 1] ¶ 14.)

"On or about March 17, 2016, Plaintiff was hospitalized at Sharp Mesa Vista Hospital for mental health issues." (*Compl.* [Doc. 1] ¶ 15.) Defendant Perez asked Plaintiff Weston to sign a release of her mental health records. (*Id.* [Doc. 1] ¶ 16.) Weston declined. (*Id.*) Several days later, Perez forged a release form using a copy of Plaintiff's signature that she had taken from another document. (*See id.* [Doc. 1] ¶¶ 20–22.) Perez submitted this fraudulent document both to Sharp Mesa Vista Hospital, and to Weston's primary care physician at Scripps. (*See id.* [Doc. 1] ¶¶ 22–23.) After receiving the fraudulent form, both the hospital and the doctor sent Plaintiff's records to Perez. (*Id.*)

Once it had seized Weston's medical records through the fraudulent use of forged documents, Child Welfare Services introduced "substantial portions of the confidential medical information" in the then-pending dependency proceedings. (*Compl.* [Doc. 1] ¶ 24.)

On December 2, 2016, Weston filed this action against Perez, Marquez, Sharp Healthcare, and Scripps Health. (*Compl.* [Doc. 1].) On joint motions, the Court dismissed Sharp Healthcare and Scripps Healthcare on January 27, 2017 and July 11, 2017, respectively. (*Jan. 27, 2017 Order* [Doc. 12]; *July 11, 2017 Order* [Doc. 24].) The sole remaining cause of action is for violation of 42 U.S.C. § 1983 against Perez and Marquez. (*Compl.* [Doc. 1] ¶¶ 25–31.)

//
//
//

## II. LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment on the pleadings is proper "when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to a judgment as a matter of law." Fajardo v. Cnty. Of Los Angeles, 179 F.3d 698, 699 (9th Cir. 1999). "Because the motions are functionally identical, the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog." Dworkin v. Hustler Magazine Inc., 867 F.2d 1188, 1192 (9th Cir. 1989).

> **For the purposes of [a Rule 12(c)] motion, the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false . . . . Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law.**

Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990) (internal citations omitted).

Complaints must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this rule to mean that "[f]actual allegations must be enough to rise above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 554, 555 (2007). The allegations in the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

Well-pleaded allegations in the complaint are assumed true, but a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences. Papasan v. Allain, 478 U.S. 265, 286 (1986); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

//
//
//

## III. DISCUSSION

### A. Plaintiff Adequately Alleges that Defendants were Acting Under Color of State Law.

Defendants contend Plaintiff's first cause of action fails because the Complaint does not allege that Perez was acting under color of state law when she forged the medical release documents. (*See Defs.' Mot.* [Doc. 20-1] 3:14–4:9.)

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" Id. at 49 (quoting United States v. Classic, 313 U.S. 299, 326 (1941)). "To constitute state action, 'the deprivation must be caused by the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible,' and 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'" Id. (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982)). "'[S]tate employment is generally sufficient to render the defendant a state actor.'" Id. (quoting Lugar, 457 U.S. at 936 n.18). "It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State." Id. at 49–50.

Plaintiff alleges that Perez forged documents, with Marquez's approval, in order to obtain confidential medical records of the person she was investigating so that she could introduce them in a future dependency proceeding. (*Compl.* [Doc. 1] ¶¶ 15–24.) The Court must assume these allegations true at this stage. See Iqbal, 556 U.S. at 678. These allegations describe an abuse of the power and position granted to Perez and Marquez by the state. See West, 487 U.S. at 48–50; Lugar, 457 U.S. at 936 n.18.

Plaintiff adequately alleges that Defendants acted under color of state law.

4

### B. Plaintiff Had a Legitimate Expectation of Privacy in her Confidential Medical Records in the Care of a Treating Physician and Hospital.

Defendants move to dismiss the first cause of action against Perez and Marquez for violation of 42 U.S.C. § 1983 on the ground that that Plaintiff did not have a legitimate expectation of privacy in her confidential medical records, which were in the care of a treating physician and hospital. (*See Defs.' Mot.* [Doc. 20-1] 5:1–6:13.)

> **The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized**.

U.S. Const. amend. IV. "Searches conducted outside the judicial process . . . . are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." City of Los Angeles, Calif. v. Patel, 135 S.Ct. 2443, 2452 (2015). "This rule 'applies to commercial premises as well as to homes.' " Id. (quoting Marshall v. Barlow's, Inc., 436 U.S. 307, 312 (1978)). There can be no Fourth Amendment violation without a "legitimate expectation of privacy" on the plaintiff's part in the searched records or personal effects. See United States v. Davis, 332 F.3d 1163, 1167 (9th Cir. 2003). To have a legitimate expectation of privacy requires that a person have an "actual (subjective) expectation of privacy" and "that the expectation be one that society is prepared to recognize as 'reasonable.' " See Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring).

Defendants analogize to United States v. Miller, 425 U.S. 435 (1976), arguing that "the Fourth Amendment's protection against unreasonable searches does not extend to a patient's medical records that are 'maintained' and 'possessed' by another." (*Defs.' Mot.* [Doc. 20-1] 5:7–10 (quoting Thomas v. Carrasco, 2010 WL 4024930, at *4–5 (E.D. Cal.

2010), aff'd, 474 F. App'x 692 (9th Cir. 2012)[1].) In Miller, the Supreme Court held that there is no legitimate expectation of privacy in the contents of original checks and deposit slips held by a bank, reasoning that "[t]he depositor takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the Government." See 425 U.S. at 442–44. It summarized the law by stating, "the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities." Id. at 443. However, the Miller Court also emphasized the necessity of examining "the nature of the particular documents sought to be protected in order to determine whether there is a legitimate 'expectation of privacy' concerning their contents." See id. at 442. It based its decision on the fact that the original checks and deposit slips sought to be protected were "not confidential communications but negotiable instruments to be used in commercial transactions." See id. The Court reasoned that "[a]ll of the documents obtained, including financial statements and deposit slips, contain only information voluntarily conveyed to the banks and exposed to their employees in the ordinary course of business." Id.

By contrast, "all provision of medical services in private physicians' offices carries with it a high expectation of privacy for both physician and patient." Tucson Woman's Clinic v. Eden, 379 F.3d 531, 550 (9th Cir. 2004). For this very reason, Congress passed the Health Insurance Portability and Accountability Act ("HIPAA") in 1996. See Webb v. Smart Document Sols., LLC, 499 F.3d 1078, 1084 (9th Cir. 2007) ("Congress intended through this legislation to 'recogniz[e] the importance of protecting the privacy of health information in the midst of the rapid evolution of health information systems.' ") (quoting S.C. Med. Ass'n v. Thompson, 327 F.3d 346, 348 (4th Cir. 2003)). Pursuant to HIPAA, a complex regulatory scheme has been promulgated to safeguard confidential patient

---

[1] The Carrasco decision is distinguishable. The state of California held the medical records at issue in that case because Plaintiff was an inmate. See Carrasco, 2010 WL 4024930, at *1. "[I]t is accepted by our society that '[l]oss of freedom of choice and privacy are inherent incidents of confinement.' " Hudson v. Palmer, 468 U.S. 517, 528 (1984).

health information. See 45 C.F.R. §§ 164.500–34 (containing detailed definitions and rules for protection of health information). This scheme reflects a societal understanding of the legitimacy of patients' right to privacy in information relating to their medical health and shared with providers such as hospitals and physicians—despite the fact that they must entrust this information with providers as an incident to receiving care. See Davis, 332 F.3d at 1167; Katz, 389 U.S. at 361.

Healthcare information is confidential for a reason. Unlike the negotiable instruments used in commercial transactions and voluntarily revealed to bank employees that the Supreme Court contemplated in Miller, 425 U.S. at 442–44, information revealed to physicians out of necessity often contains intimate details about a patient's body and mind. Disclosure may threaten grave ramifications to a patient's wellbeing, ranging in scope from insurance to employment to personal consequence, and even into the legal realm—as we see in this case. Defendants would have the Court ignore the obvious distinction and blindly follow Miller's approach as to records of commercial transactions.

This is not a sound approach. According to the Complaint, the healthcare providers in this case protected the confidential records to such a degree that Perez and Marquez found it necessary to employ methods both criminal and fraudulent, *see* Part III.D., *infra*, in order to obtain them. (*See Compl.* [Doc. 1] ¶¶ 15–24.) Defendants' interpretation of the law would dismantle patients' expectations of privacy in HIPAA-protected medical information—thereby undermining Congress' aims in enacting the statutory scheme in the first place.

Plaintiff had a legitimate expectation of privacy in her confidential medical records. See, e.g., Tucson Woman's Clinic, 379 F.3d at 550. Defendants provide no cogent rationale for holding otherwise.

//
//
//
//

### C. Defendants Do Not Demonstrate that the Complaint Does Not Sufficiently Allege Supervisory § 1983 Liability.

Defendants assert Marquez was not liable as Perez's supervisor because she was not personally involved in Perez's alleged scheme to forge the medical release. (*Defs.' Mot.* [Doc. 20-1] 5:1–6:13.)

"A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)). " '[A] plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury. The law clearly allows actions against supervisors under section 1983 as long as a sufficient causal connection is present and the plaintiff was deprived under color of law of a federally secured right.'" Id. (quoting Redman v. Cnty. of San Diego, 942 F.2d 1435, 1447 (9th Cir. 2011)). " 'The requisite causal connection can be established . . . by setting in motion a series of acts by others,' . . . or by 'knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury[.]' " Id. at 1207–08 (quoting Redman, 942 F.2d at 1447, Dubner v. City & Cnty. of San Francsico, 266 F.3d 959, 968 (9th Cir. 2001), respectively). " 'A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.' " Id. at 1208 (quoting Watkins v. City of Oakland, 145 F.3d 1087, 1093 (9th Cir. 1998)).

Plaintiff alleges that Marquez explicitly approved her subordinate's scheme to forge a fraudulent medical release document in order to illegally obtain confidential medical information from providers of Plaintiff's medical treatment. (*Compl.* [Doc. 1] ¶ 21 ("Perez, with Marquez's approval, whited out the son's information on the document,

but preserved Plaintiff's signature and wrote in a new request for documents—for *Plaintiff's* medical records" (formatting altered from original).) See Cal. Penal Code § 470 (defining the crime of forgery); Tucson Woman's Clinic, 379 F.3d at 550 (outlining the expectation of privacy in one's confidential medical records kept in the care of a physician). For the reasons described in Part III.B., *supra*, Defendants do not show that committing forgery in order to obtain confidential medical information did not violate Plaintiff's Fourth Amendment rights. Allegations that Marquez gave her approval for Perez's actions give rise to the inference of a causal connection between her approval and the constitutional deprivation. See Starr, 652 F.3d at 1207. This is sufficient for supervisory § 1983 liability.

### D. Defendants are Not Entitled to Qualified Immunity on the Facts Alleged in the Complaint.

Defendants contend that qualified immunity shields them from liability for their actions in forging medical release documents. (*Defs.' Mot.* [Doc. 20-1] 6:17–8:11.)

"Public officials are immune from suit under 42 U.S.C. § 1983 unless they have 'violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.'" City & Cty. of San Francisco, Calif. v. Sheehan, 135 S.Ct. 1765, 1774 (2015). "In other words, [qualified] immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" White v. Pauly, 137 S. St. 548, 551 (2017) (quoting Mullenix v. Luna, 136 S.Ct. 305, 308 (2015)) (internal quotation omitted). "The doctrine [of qualified immunity] exists to protect mistaken but reasonable decisions, not purposeful criminal conduct." Hardwick v. County of Orange, 844 F.3d 1112, 1119 (9th Cir. 2017). In California, forgery is purposeful criminal conduct. See Cal. Penal Code § 470 ("Every person who, *with the intent to defraud*, counterfeits or forges the seal or handwriting of another is guilty of forgery." (emphasis added)).

In their motion, Defendants argue that the law as to informational privacy is not clear, and thus that they could not have violated a clearly established right by depriving

Plaintiff of her right to privacy. (*Defs.' Mot.* [Doc. 20-1] 6:14–8:11.) As Plaintiff points out in opposition, Defendants misread the Complaint. (*See Pl.'s Opp'n* [Doc. 21] 13:13–15:21; *Compl.* [Doc. 21] ¶¶ 25–31.) The operative pleading does not allege a violation of Plaintiff's right to informational privacy, but rather her right to be free from unreasonable searches and seizures pursuant to the Fourth Amendment. (*Compl.* [Doc. 21] ¶¶ 25–31.) These are distinct rights.

Defendants make two arguments in their reply brief. Neither has merit. The first is responsive to a contention made by Plaintiff in her opposition—that purposeful criminal conduct is not entitled to qualified immunity, per Hardwick, 844 F.3d at 1119–20. (*See Defs.' Reply* [Doc. 22] 4:5–5:17; *Pl.'s Opp'n* [Doc. 21] 16:1–17:3.)

Defendants attempt to distinguish their conduct from criminal forgery, and hence the purposeful criminal conduct rule of Hardwick, thusly:

> **Perez's filling in of a blank, previously[]signed authorization form is insufficient to establish the level of intentional fraudulence prohibited by California's forgery statutes, and is leagues short of the type of judicial deception chastised by the *Hardwick* court.**

(*Defs.' Reply* [Doc. 22] 5:11–14.) Via three attached requests for judicial notice, Defendants attempt to introduce new evidence along with their reply brief in order to argue (for the first time) that Perez did not "white out" Plaintiff's son's information on the relevant form (as the Complaint alleges)—but instead used a blank form that already contained Plaintiff's signature in order to forge the release documents. (*See Requests for Judicial Notice* [Doc. 22-1] Exhs. A–C.) Defendants' requests for judicial notice are denied. It would be inappropriate to allow Defendants to introduce this evidence now—when Plaintiff would have no full and fair opportunity to respond to it—and when there is no apparent reason why it could not have been introduced along with the moving papers. Further, there is no evidence that these ostensible release forms are "matters of public record," as Defendants represent in their request. (*Request for Judicial Notice* [Doc. 22-1] 1:23–28.) The declaration attached to the request merely states that these

files are contained within the Child Welfare Services litigation file. (*Hommel Decl.* [Doc. 22-2] ¶¶ 2–3.) This is not sufficient. See Fed. R. Evid. 201(b), (c).

Still, even assuming *arguendo* that Perez did use an otherwise blank form with Plaintiff's signature on it to forge a fraudulent medical release, Defendants' contention that "Perez's filling in of a blank, previously[]signed authorization form is insufficient to establish the level of intentional fraudulence prohibited by California's forgery statues . . . ." is simply wrong. See, e.g., Cal. Penal Code § 470(b) ("Every person who, with the intent to defraud, counterfeits or forges the . . . *handwriting* of another is guilty of forgery." (emphasis added)); Union Tool Co. v. Farmers & Merchants' Nat. Bank of Los Angeles, 192 Cal. 40, 52 (1923) ("Any material alteration of a writing with intent to defraud anyone, so as to make the writing appear to be different from what it was originally intended to be, is a forgery."); People v. Horowitz, 70 Cal. App. 2d 675, 686–87 (1945) (applying the rule of Union Tool Co. to Cal. Penal Code § 470) ("The intent on the part of the accused to defraud another constitutes the essence of the crime forgery, and the fact of forgery may imply an intention to defraud.").

The final paragraph of this section of Defendants' reply brief states:

> **Plaintiff cites to no authority holding that an act of "forgery" itself—even one that does meet criminal standards—could either violate the Fourth Amendment, or otherwise defeat qualified immunity.**

(*Defs.' Reply* [Doc. 22] 5:15–17.) This, too, is incorrect. Hardwick is that authority, 844 F.3d at 1119–20, and Plaintiff cites to Hardwick. (*Pl.'s Opp'n* [Doc. 21] 16:1–22.) The case is directly on-point, and it is binding authority in this district. "The doctrine [of qualified immunity] exists to protect mistaken but reasonable decisions, not purposeful criminal conduct." Hardwick, 844 F.3d at 1119.

Second, Defendants make a new argument in their reply brief, focusing on the availability of qualified immunity as to the Fourth Amendment violation alleged in the Complaint. "The district court need not consider arguments raised for the first time in a reply brief." Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007). Still, though

Defendants deprived Plaintiff of the opportunity to respond to this point, the Court will briefly address it.

In short, Defendants contend that Plaintiff's right to be free from unreasonable searches of confidential medical records—accomplished through the fraudulent use of forged documents—was not clearly established at the time of the alleged violation. (*Defs.' Reply* [Doc. 22] 6:1–7:9.) Defendants' argument seems to be that in the absence of identical precedent, with these precise facts, there can be no clearly established law that would have put Defendants on notice of the illegality of their actions. (*Id.*) This is meritless.

The contention rests on White, 137 S.Ct. at 551–52. In that case, the Supreme Court reiterated "the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality[,]' " White, 137 S.Ct. at 552 (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011)), but rather "must be 'particularized' to the facts of the case." Id. (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "Otherwise[,]" the Court held, "[p]laintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." Id. (quoting Anderson, 483 U.S. at 639). However, in its analysis, the Court also noted:

> **Of course, "general statements of the law are not inherently incapable of giving fair and clear warning" to officers, United States v. Lanier, 520 U.S. 259, 271, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997), but "in the light of pre-existing law the unlawfulness must be apparent[.]"**

Id. The unlawfulness of forging documents so as to seize confidential medical information and use it against a patient in a pending legal proceeding would have been readily apparent. See id.

Defendants are not entitled to qualified immunity on the facts alleged in the Complaint.

//
//

12

16-CV-2952 W (WVG)

## IV. CONCLUSION & ORDER

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings is **DENIED**. [Doc. 20.]

**IT IS SO ORDERED.**

Dated: October 11, 2017

Hon. Thomas J. Whelan
United States District Judge